FILED Rec'd 8/25/15
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ AUG 24 2015 ★

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
PHEOD KHAN,

                     Plaintiff,

-*against*-

THOMAS T. LAVALLEY,

                     Defendant.
-----------------------------------------------------------X

**DECISION & ORDER**
14-cv-215 (WFK)

**WILLIAM F. KUNTZ, II, United States District Judge**

Before the Court is a petition for a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254 by Petitioner Pheod Khan ("Petitioner"). Petitioner seeks federal habeas relief based on six grounds: (1) Petitioner's sentence constitutes cruel and unusual punishment, (2) Petitioner was denied due process as he was sentenced based on acquitted conduct, (3) Petitioner was denied due process when the trial court failed to dismiss a juror, (4) Petitioner was denied due process when the trial court failed to charge a justification, (5) the evidence at trial was legally insufficient, and (6) Petitioner's conviction was "repugnant." For the reasons discussed below, Petitioner's claims are meritless. Accordingly, the petition for the writ of *habeas corpus* is DENIED in its entirety.

## FACTUAL AND PROCEDURAL BACKGROUND

On November 11, 2006, at approximately 4:30 A.M., fistfights broke out among a couple of groups of people outside the City Lights Diner on Atlantic and Third Avenues in Brooklyn, New York. Dkt. 5 ("Affirmation") at ¶ 4. Dallas Gilchrist, a participant in one of the fights, "received blows and punched some people." *Id.* At one point, Mr. Gilchrist fell to the ground. *Id.* Petitioner, who was not part of the original fistfights, ran over towards the chaos, and "was seen by several witnesses to pull a gun out of his waistband and shoot [Mr.] Gilchrest several times in the torso and legs." *Id.* Petitioner and his friend, Chakka Slaughter, then left the scene in Petitioner's car. *Id.* Mr. Gilchrest died from his gunshot wounds, one of which penetrated his

1

heart, lung, and liver. *Id.* Later that day, Petitioner and Mr. Slaughter were apprehended in Virginia. *Id.*

While in Virginia, Petitioner made statements to State Trooper Tony Jones, including a statement that Mr. Gilchrest struck and pushed people during the fight, including Petitioner, who was allegedly pushed to the ground. *Id.* at ¶ 5. Petitioner further stated that because he was scared, he pulled out a gun and started shooting at Mr. Gilchrest. *Id.*

Based on the foregoing, Petitioner was charged, by Kings County Indictment Number 10126/2006, with one count of Murder in the Second Degree under New York Penal Law ("NYPL") § 125.25[1] and one count of Criminal Possession of a Weapon in the Second Degree under NYPL § 265.03[3]. *Id.* at ¶ 6.

Beginning on January 12, 2010, Petitioner was tried before a jury in the Supreme Court, Kings County. *Id.* at ¶ 7. On January 29, 2010, the jury acquitted Petitioner of Murder in the Second Degree, but convicted him of Criminal Possession of a Weapon in the Second Degree. *Id.* at ¶ 8. On February 8, 2010, Petitioner was sentenced to a term of fifteen years in prison, plus five years of post-release supervision. *Id.* at ¶ 9.

On April 7, 2011, Petitioner, represented by counsel, filed an appeal to the Appellate Division, Second Department (the "Appellate Division") presenting the following questions: (1) "Whether the sentence should be reduced as a matter of discretion or because it constitutes cruel and unusual punishment[,]" (2) "Whether the trial court erred in relying on acquitted conduct in imposing the maximum sentence permitted by law[,]" (3) "Whether the trial court committed reversible error in denying the motion for a mistrial after a juror was intimidated by an audience member[,]" and (4) "Whether the criminal possession of a weapon conviction should be reversed for failure to charge justification, or, in the alternative, as being against the weight of the

evidence or in the interest of justice[.]" Dkt. 5-5 ("State Record Volume IV") at 10; *see also id.* at 5-41.[1]

In an opinion dated November 1, 2011, the Appellate Division unanimously affirmed Petitioner's judgment of conviction. *People v. Khan*, 932 N.Y.S.2d 107, 108 (2d Dep't 2011). In the unanimous decision, the Appellate Division held "[Petitioner's] contention that the evidence was legally insufficient to support his conviction of criminal possession of a weapon in the second degree is unpreserved for appellate review." *Id.* . The Appellate Division also found "[Petitioner's] contention that the Supreme Court erred in failing to instruct the jury on the defense of justification with respect to the charge on criminal possession of a weapon in the second degree is unpreserved for appellate review[,]" and "[t]he Supreme Court properly determined that the juror was not grossly unqualified to serve as a member of the jury[.]" *Id.* at 108-09 (internal citations omitted). The Appellate Division further held "[Petitioner's] contention that the Supreme Court improperly considered charges of which he was acquitted as a basis for imposing sentence is without merit" and "[Petitioner's] contention that his sentence violated the Eighth Amendment prohibition against cruel and unusual punishment is without merit[.]" *Id.* at 109. Lastly, the Appellate Division stated that all of Petitioner's remaining contentions were unpreserved for appellate review and without merit. *Id.*

On December 3, 2011, Petitioner sought leave to appeal the Appellate Division's decision to the New York Court of Appeals. Affirmation at ¶ 13. Leave was denied on January 31, 2012. *Id.*; *see also People v. Khan*, 963 N.E.2d 131 (N.Y. 2012).

On April 9, 2013, Petitioner submitted a petition for writ of error *coram nobis* in the Appellate Division arguing he was denied effective assistance of appellate counsel due to

---

[1] All page numbers for the state court records refer to the pages of the PDF documents filed on ECF.

3

appellate counsel's failure to argue "that the prosecutor's cross-examination of [Petitioner] was improper because the [] questions violated the attorney-client privilege . . . and suggested that [Petitioner] had tailored his testimony to support a justification defense[.]" Affirmation at ¶ 14. On October 23, 2013, the Appellate Division denied Petitioner's application for writ of error *coram nobis*. *People v. Pheod Khan*, 973 N.Y.S.2d 578 (2d Dep't 2013) *leave to appeal denied sub nom. People v. Khan*, 4 N.E.3d 976 (N.Y. 2014). On November 18, 2013 Petitioner sought leave to appeal the denial of his motion for a writ of error *coram nobis*, but the Court of Appeals denied Petitioner permission to appeal on January 27, 2014. *Id.*; see also Affirmation at ¶ 16.

On January 10, 2014, Petitioner filed his *pro se* petition for a writ of *habeas corpus*. Dkt. 1, Petition for Writ of *Habeas Corpus* ("Petition"). Petitioner seeks federal habeas relief on the same grounds raised in his brief to the Appellate Division, namely: (1) Petitioner's sentence constitutes cruel and unusual punishment, (2) Petitioner was denied due process as he was sentenced based on acquitted conduct, (3) Petitioner was denied due process when the trial court failed to dismiss a juror, (4) Petitioner was denied due process when the trial court failed to charge justification, (5) the evidence at trial was legally insufficient, and (6) Petitioner's conviction was "repugnant." *Id.* at 2, 5-14. The Court will address each issue in turn.

## DISCUSSION

### I. Legal Standard

The Court's review of the Petition is governed by The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254. A federal habeas court may only consider whether a person is in custody pursuant to a state court judgment "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). AEDPA requires federal courts to apply a "highly deferential standard" when conducting *habeas corpus* review of state court

4

decisions and "demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal quotation marks and citations omitted).

Moreover, a petitioner is entitled to *habeas corpus* relief only if he can show the state court adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[.]" 28 U.S.C. § 2254(d)(1). "For the purposes of federal habeas review, 'clearly established law' is defined as 'the holdings, as opposed to dicta, of the Supreme Court's decisions as of the time of the relevant state court decision.'" *Davis v. Racette*, 11-CV-5557, 2015 WL 1782558, at *3 (E.D.N.Y. Apr. 21, 2015) (Brodie, J.) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)). "A state court decision is 'contrary to,' or an 'unreasonable application of,' clearly established law if the decision (1) is contrary to Supreme Court precedent on a question of law; (2) arrives at a conclusion different [from] that reached by the Supreme Court on 'materially indistinguishable' facts; or (3) identifies the correct governing legal rule, but unreasonably applies it to the facts of the petitioner's case." *Id.* (quoting *Williams*, 529 U.S. at 412-13 and citing *Harrington v. Richter*, 562 U.S. 86, 99-100 (2011)). To establish that a state court's decision constitutes an unreasonable application of the law, the state court decision must be "more than incorrect or erroneous[,]" it must be "objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). For the reasons discussed below, the Court denies the petition for the writ of *habeas corpus* in its entirety.

## II. Analysis

### 1. Petitioner's Challenge to His Sentence as Cruel and Unusual is Without Merit

Petitioner argues that his fifteen year sentence constitutes cruel and unusual punishment. However, "[i]t is well settled that an excessive sentence claim may not be raised as grounds for

habeas corpus relief if the sentence is within the range prescribed by state law." *Williams v. LaValley*, 12-CV-1141, 2014 WL 1572890, at *5 (N.D.N.Y. Apr. 17, 2014) (Singleton, Jr., J.) (internal citations omitted).

Here, Petitioner was convicted of Criminal Possession of a Weapon in the Second Degree. Affirmation ¶ 8. The term of conviction for Criminal Possession of a Weapon in the Second Degree "must be at least three and one-half years and must not exceed fifteen years[.]" N.Y. Penal Law § 70.02(1)(b), (3)(b). Because Petitioner's sentence was within the range prescribed by New York State law, Petitioner's challenge to his sentence does not present a cognizable federal question and must be dismissed. *See Congelosi v. Miller*, 611 F. Supp. 2d 274, 316 (W.D.N.Y. 2009) (Siragusa, J.) (adopting Report and Recommendation of Magistrate Judge Victor E. Bianchini); *Betancourt v. Bennett*, 02-CV-3204, 2003 WL 23198756, at *14 (E.D.N.Y. Nov. 7, 2003) (Weinstein, J.).

### 2. Many of Petitioner's Claims are Procedurally Barred

Petitioner seeks habeas relief claiming the evidence at trial was legally insufficient, he was denied due process when the trial court failed to charge a justification, and the jury verdict was "repugnant." However, Petitioner's arguments are without merit because they are procedurally barred from the Court's review by an adequate and independent state procedural ground.

Federal courts are procedurally barred from considering a state court judgment that fairly "rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Coleman v. Thompson*, 501 U.S. 722, 729 (1991) (internal citations omitted). "A state procedural bar qualifies as an independent and adequate state law ground if the last state court rendering a judgment in the case clearly and expressly stated that its judgment rested on a

state procedural bar." *Swail v. Hunt*, 742 F. Supp. 2d 352, 358 (W.D.N.Y. 2010) (Bianchini, Mag. J.) (internal quotation marks, citations, and alterations omitted). The Second Circuit has also established that "federal habeas review is foreclosed when a state court has expressly relied on a procedural default as an independent and adequate ground, even where the state court has also ruled in the alternative on the merits of the federal claim." *Velasquez v. Leonardo*, 898 F.2d 7, 9 (2d Cir. 1990). Specifically, "[e]ven where the state court has ruled on the merits of a federal claim in the alternative, federal habeas review is foreclosed where the state court has also expressly relied on the petitioner's procedural default." *Murden v. Artuz*, 497 F.3d 178, 191 (2d Cir. 2007) (internal quotation marks and citation omitted). As such, "federal habeas review is precluded as long as the state court explicitly invokes a state procedural bar rule as a separate basis for decision." *Velasquez*, 898 F.2d at 9 (internal quotation marks and citation omitted). A state court decision is adequate if "it is firmly established and regularly followed." *Swail*, 742 F. Supp. 2d at 358 (internal quotation marks and citation omitted).

Nonetheless, "[e]ven though a constitutional claim is procedurally barred from federal review, [a petitioner] may obtain review of his claim on the merits if he shows that equity demands it." *Murden*, 497 F.3d at 194 (internal citation omitted). To obtain such review, a petitioner must "either demonstrate cause and prejudice for the procedural default, or that the constitutional violation has probably resulted in the conviction of one who is actually innocent of the substantive offense." *Id.* (internal quotation marks and citation omitted).

Here, with respect to Petitioner's legal insufficiency claim, the Appellate Division held "[t]he [Petitioner's] contention that the evidence was legally insufficient to support his conviction of criminal possession of a weapon in the second degree is unpreserved for appellate review[.]" *Khan*, 932 N.Y.S.2d at 108 (citing N.Y. Crim. Proc. Law ("NYCPL") § 470.05[2]).

Although the Appellate Division discussed the merits of Petitioner's claim, its decision also clearly stated a state procedural ground for default – failure to comply with NYCPL § 470.05[2], New York's contemporaneous objection rule. As such, the Court is foreclosed from reviewing the state court decision because the Appellate Division "also expressly relied on [Petitioner's] procedural default." *Murden*, 497 F.3d at 191 (internal quotation marks and citation omitted); *see also Glenn v. Bartlett*, 98 F.3d 721, 724-25 (2d Cir. 1996) (habeas review precluded where Appellate Division clearly stated petitioner had failed to object to prosecutor's comments and failed to preserve the record even though Appellate Division also went on to discuss the due process merits of the claim).

With respect to the justification charge, the Appellate Division held "[i]n addition, the [Petitioner's] contention that the Supreme Court erred in failing to instruct the jury on the defense of justification with respect to the charge on criminal possession of a weapon in the second degree is unpreserved for appellate review[.]" *Khan*, 932 N.Y.S.2d at 108. With respect to the verdict being "repugnant," the Appellate Division held "[it] is unpreserved for appellate review and, in any event, without merit." *Id.* at 109. Although the Appellate Division simply stated these claims were also "without merit," its decision clearly states a procedural ground for default. *Id.* at 108-09. Accordingly, the Court is foreclosed from reviewing the state court decision because the Appellate Division "also expressly relied on [Petitioner's] procedural default." *Murden*, 497 F.3d at 191 (internal citation omitted); *see also Glenn*, 98 F.3d at 724.

Moreover, because the New York Court of Appeals decision denying leave to appeal was silent, the Appellate Division was the last state court which rendered a judgment in the case where the decision clearly and expressly stated its judgment rested on a state procedural ground for each claim mentioned above. Because the Appellate Division's decision "fairly appears to

rest primarily on state law[,]" habeas review by this Court is precluded. *Coleman*, 501 U.S. at 740 (internal quotation marks omitted).

Lastly, Petitioner fails to allege any cause that would excuse his procedural default for each of these claims or prejudice that would arise from finding such a procedural default, nor does he allege that a fundamental miscarriage of justice would occur should the Court decline to reach the merits of these claims. *See* Petition at 5-14; *see also Murden*, 497 F.3d at 194-95. Accordingly, Petitioner's request for *habeas* relief on these grounds is denied.

### 3. Petitioner's Claim He Was Denied Due Process Because He Was Sentenced Based on Acquitted Conduct is Without Merit

Petitioner argues he is entitled to federal habeas relief because he was denied due process when he was sentenced based on acquitted conduct. Petition at 9. Petitioner's argument, however, is without merit.

In Petitioner's brief to the Appellate Division, Petitioner previously argued "it is clear that the sentence imposed was based upon the acquitted conduct[,]" because "the prosecutor justified the recommendation by arguing that if [Petitioner] had not used the gun, Dallas Gilchrist would not have died from a hail of gunfire fired by [Petitioner] that fateful morning." State Court Record Volume IV at 24, 26 (internal quotation marks omitted). The Appellate Division rejected this argument by stating "[Petitioner's] contention that the Supreme Court improperly considered charges of which he was acquitted as a basis for imposing sentence is without merit[.]" *Khan*, 932 N.Y.S.2d at 109.

Upon review of the record, there is nothing to suggest that the state court considered acquitted conduct when sentencing Petitioner. Dkt. 5-4 ("State Court Record Volume III") at 299-316. The record establishes that both the prosecutor and defense counsel argued to the court that it should not consider the acquitted conduct, and the court made no mention of the acquitted

conduct when sentencing Petitioner. *Id.* at 301, 309, 314-15, 316. Accordingly, because there are no facts to suggest the state court considered acquitted conduct when sentencing Petitioner, it cannot be said that the state court decision was based on an unreasonable application of clearly established law. *See Davis*, 2015 WL 1782558, at *3. As such, Petitioner is not entitled to habeas relief on this claim.

### 4. Petitioner's Claim He Was Denied Due Process Because the Trial Court Failed to Dismiss a Juror is Baseless

Petitioner claims he is entitled to habeas relief because he was denied due process to a fair trial when the state court refused to dismiss a juror. Petition at 8-9. However, Petitioner's argument is baseless.

As discussed above, a petitioner is entitled to *habeas corpus* relief only if he can show the state court adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[.]" 28 U.S.C. § 2254(d)(1). Under the Sixth Amendment, a criminal defendant is guaranteed the right to be tried by an impartial jury. *Berghuis v. Smith*, 559 U.S. 314, 319 (2010). On habeas review, a federal court must determine "whether there is fair support in the record for the state court's conclusion that the challenged juror [or jurors] would be impartial." *See Black v. Goord*, 419 F. Supp. 2d 365, 375 (W.D.N.Y. 2006) (Bianchini, Mag. J.) (internal quotation marks and citations omitted). The Second Circuit has held "on [habeas] review, the state trial court is entitled to a presumption of correctness with respect to its conclusion that the jury was impartial." *Booker v. Girdich*, 262 F. Supp. 2d 264, 268 (S.D.N.Y. 2003) (Marrero, J.) (internal quotation marks and alterations omitted) (citing *Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 814 (2d Cir. 2000). As such, a trial court's finding of juror

impartiality will only be overturned for "manifest error." *Black*, 419 F. Supp. 2d at 375 (internal quotation marks and citations omitted).

In his brief to the Appellate Division, Petitioner argued that he was denied the right to a fair trial when the state court failed to dismiss Juror Number Three after she had been "accosted" by a group of five to six men while walking from the courthouse. State Court Record Volume IV at 29. According to Petitioner, "Juror [Number Three] said that, ideally, she would like to be 'recused.' She said that she was nervous and that the incident had 'thrown [her] a bit.' Juror [Number Three] said that she was uncomfortable and that there was a chance that the incident would color her opinion." *Id.* at 29-30. Based off this, Petitioner argued that "the [e]ffect of the contact on [Juror [Number Three] had to have been prejudicial." *Id.* at 31. As such, Petitioner stated "[t]he trial court's refusal to declare a mistrial, or even conduct the probing inquiry defense counsel requested and the law required, violated [Petitioner's] fundamental constitutional rights to due process and to a jury trial." *Id.* at 32 (citations omitted).

It is unanimous decision, the Appellate Division held "[c]ontrary to [Petitioner's] contention, the Supreme Court did not improvidently exercise its discretion in refusing to disqualify a sworn juror who expressed apprehension after one member of a group of five or six individuals, who were seen inside the courtroom, had approached the juror to talk. Upon questioning, the juror unequivocally stated that she could reach a fair and impartial decision. The Supreme Court properly determined that the juror was not grossly unqualified to serve as a member of the jury[.]" 932 N.Y.S.2d at 109 (citations omitted)

Here, there is no evidence in the record that the decision of the trial court was either contrary to established federal law or unreasonable in light of the facts. Moreover, the following

conversation between the trial court and Juror Number Three lends support to the conclusion that Juror Number Three was impartial:

************

> THE COURT: Okay. You remember when we went through the process of picking a jury we were all very concerned we could get a juror that was fair and impartial. You're a very good juror. Been very alert throughout out this trial as it's progressed. We are just concerned that this event might have some impact on you being fair and impartial in this case. Would that have any impact on you being fair and impartial in this case?
>
> JUROR NUMBER THREE: I would say it wouldn't but, you know, at the same time this experience, just right now has kind of made the process - - it's kind of thrown me a bit.
>
> THE COURT: In other words, you feel upset; obviously, you feel upset by it?
>
> JUROR NUMBER THREE: Yes.
>
> . . . THE COURT: Approximately, about three rows of people that I have been noticing and, at this point, it's important to know whether it will, in fact, impact upon you being fair and impartial. It's hard for us to proceed, if you are not sure or, if it would impact upon you, then that's something we gotta know about. So that's really what I'm inquiring about. Could you sit there, listen to the evidence in this case so far, there's more evidence to come in, would you be able to finish your duties, complete your duties as a juror and not have this impact upon your being fair and impartial to this defendant?
>
> JUROR NUMBER THREE: Yes, ideally, but I would like to recuse myself because, yeah, just because how - - because of how this situation occurred.
>
> THE COURT: Okay. So you feel you are having a problem sitting here?
>
> JUROR NUMBER THREE: You know, I mean not in the sense of could I - - could I serve my duty to be fair and impartial. But I think, just that fact that it did upset me, I'm sure it will – there's a chance that, I guess, it could color my - - my - - just my thinking.
>
> THE COURT: Okay. All right.

... THE COURT: [Juror Number Three] just - - we just want to clarify one thing. And, just as a background. You took an oath to sit as a juror and took an oath to be fair and impartial. What we want to make sure is that it's - - you, as you sit here now - - could you sit to the end of this trial as a fair and impartial juror? Could you, based on the evidence that you have seen and heard and will see and hear, when you go into the jury room to deliberate, would you be fair and impartial to this defendant in this case?

JUROR NUMBER THREE: Yes.

THE COURT: Yes. And it has to be unequivocal. Can't be any question about it because it's a very important case, as you realize. It's important for everyone. So it has to be unequivocal. You know, things happen in life, doesn't impact upon the facts, what the facts are in the case. Can you listen to all of the facts in this case and be fair and impartial? That's the question.

JUROR NUMBER THREE: Yeah.

THE COURT: Can you?

JUROR NUMBER THREE: Um-hum.

THE COURT: This would not impact upon you?

JUROR NUMBER THREE: No.

THE COURT: You're sure?

JUROR NUMBER THREE: I guess, I have hesitation. The situation is different from what I am hearing in the courtroom. But, at the same time, I just felt uncomfortable with what happened.

THE COURT: Well - - and that - - as you should be - - as you should feel uncomfortable. But the real question is people are in the audience and it doesn't have anything to do with him. He's here. They're there. Has nothing to do with him. There's no indication he had anything at all to do with this. So if you take that into consideration, you know, a lot of things could happen, which would make you feel uncomfortable, or me feel uncomfortable, as we go through our lives. The real question is can you sit there, sit there as a fair and impartial person? Can you listen to this evidence and then go back to deliberate? That's really all this is

> about. If you remember, when we went through voir dire, that's what it, ultimately, is all about, to find people that have the have ability just to sit there and listen to this and be fair. That's what we want. If you can tell me, unequivocally, that you can do that, fine.
>
> JUROR NUMBER THREE: Yes.
>
> THE COURT: If not, that's fine.
>
> JUROR NUMBER THREE: I can.
>
> THE COURT: You can do it?
>
> JUROR NUMBER THREE: Yes.
>
> THE COURT: You are sure?
>
> JUROR NUMBER THREE: Yes.
>
> . . .
>
> THE COURT: Okay. Far as I'm concerned, she said she could be fair and impartial. That's what it's all about.

State Court Record Volume III at 13-22. Based on the foregoing conversation between the trial court and Juror Number Three, there is fair support in the record for the trial court's conclusion that Juror Number Three could be impartial given her unequivocal statements about being able to be fair and impartial. *Id.*

Moreover, there is no evidence of manifest error. For example, in *Booker*, the petitioner argued that "his Sixth Amendment right to a fair and impartial jury was violated because the state trial court failed to excuse [a juror member] after she told the court she was going to have trouble continuing to deliberate because her car had been vandalized that morning." *Booker*, 262 F. Supp. 2d at 267-68. In rejecting the petitioner's argument, the *Booker* court found no manifest error had occurred because "[the trial judge] engaged in an intensive discussion with [the juror member], suggesting remedies for [the juror member's] predicament, reminding [the juror

14

member] of the difficulties of dismissing her as a juror, and offering a sympathetic ear to [the juror member] as [she] recounted the problems she faced." *Id.* at 268. The *Booker* court went on to state that "even if [the juror member] had been less than engaged in the jury's deliberations because of her personal problems, the Court is not persuaded that this behavior would have improperly swayed the decision-making abilities of all eleven other jurors[.]" *Id.* at 269.

As was the case in *Booker*, the same is true here. As set forth above, the conversation between the trial judge and Juror Number Three reveals an extensive discussion whereby the trial judge not only offered a sympathetic ear to Juror Number Three but also reminded Juror Number Three about the importance of being fair and impartial during jury deliberations. State Court Record Volume III at 13-22. Moreover, there is nothing in the record to suggest that Juror Number Three's behavior would have improperly swayed any of the other jurors. *See, e.g.*, *Booker*, 262 F. Supp. 2d at 268-69. Accordingly, the state court decision is entitled to a presumption of correctness. *Id.* at 268. Therefore, Petitioner's request for *habeas* relief on this issue is denied.

## CONCLUSION

Petitioner's petition for a writ of *habeas corpus* is DENIED in its entirety. A certificate of appealability shall not issue. *See* 28 U.S.C. § 2253. The Clerk of the Court is respectfully directed to serve notice of entry of this Order on all parties and to close the case.

SO ORDERED

/S/ Judge Judge William F. Kuntz, II

_____
HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: August 24, 2015
      Brooklyn, New York